UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

OXFORD HOUSE, INC. a Delaware
not for profit corporation, and
JUSTIN POLING,

      Plaintiffs,

v.                                    Civil Action No. 2:11-00402

TOWN OF FAYETTEVILLE, WEST VIRGINIA
a West Virginia municipal corporation,
MAYOR JAMES AKERS in his official and
individual capacities, and
BILL CORLEY,

      Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>


Pending is defendant Bill Corley's motion to dismiss for failure to state a claim upon which relief can be granted, filed July 1, 2011.[1]


I. Background


Plaintiff Oxford House, Inc., is a Delaware not-for-profit corporation with a principal place of business in Silver Spring, Maryland. Oxford House assists in the establishment of affordable housing for, and provides support to, individuals

---

[1] It is ORDERED that the stay, entered November 1, 2011, be, and it hereby is, lifted.

with disabilities, including those who are recovering from substance abuse or alcoholism. Oxford House is responsible for chartering individual housing units throughout the United States, including one proposed for location at 22 Short Street, Fayetteville, West Virginia (the "Oxford House-Bledsoe"), the attempted establishment of which gives rise to the present litigation.

Plaintiff Justin Poling currently resides at an Oxford House location in Charleston, West Virginia. Poling is a person with a disability within the meaning of the Fair Housing Act, 42 U.S.C. § 3601 et. seq. ("FHA"). Poling's frustrated attempts to commence residency at the Oxford House-Bledsoe lie at the core of his legal claims.

There are three defendants in this case. Two — the Town of Fayetteville and its Mayor James Akers — do not join in the current motion. The movant, Bill Corley, is a West Virginia resident, private citizen, and neighbor of the proposed Oxford House-Bledsoe. Although the actions of the three defendants are intertwined, this opinion addresses only the claims against Corley.

The events leading up to Corley's involvement in this case can be briefly summarized. Oxford House is under contract

2

with the West Virginia Department of Health and Human Resources to open a minimum of five Oxford houses in the state.   Pursuant to that contract, in September 2010, Oxford House developed plans to open an Oxford house in Fayette County, West Virginia, to be supervised by Bill Breckenridge.   Reverend Rick Rutledge, a local minister, actively assisted Breckenridge by setting up meetings with various local officials.   In late April 2011, Oxford House signed a lease for a single-family home at 22 Short Street, Fayetteville, West Virginia, a location suitable for housing up to six persons in recovery from alcoholism and drug addiction.   The home became known as the Oxford House-Bledsoe. On May 22, 2011, Justin Poling was accepted as a resident.

Shortly thereafter, Breckenridge began to encounter resistance from the Fayetteville city government.   He received a call from Mayor Akers warning that "there had better not be anyone in the house [Oxford House-Bledsoe]," advising that Oxford House needed to apply for a business license to operate a treatment facility, and threatening to seek an injunction to halt Oxford House's plans.   (Compl. ¶ 34).   In response, Breckenridge informed Mayor Akers that the Oxford House-Bledsoe was not a treatment facility, and that it was "deemed to be a single family dwelling."   (Id. at ¶ 35).   Following that conversation, the Town of Fayetteville filed an ex parte

3

petition for a temporary restraining order ("TRO") in the Circuit Court of Fayette County, West Virginia.

According to the complaint, the events making Corley a defendant in this action occurred on a single day, on or about May 27, 2011, the date on which the TRO was denied. That day, Corley met with Rutledge at 22 Short Street to discuss plans for the Oxford House-Bledsoe. During the course of that conversation, Corley became angry and agitated, and begged Rutledge not to allow the Oxford house into the neighborhood. If Oxford House did go forward with its plans, Corley said, he would "stop at nothing" to prevent it. (Id. at ¶ 54). Corley further stated that he would "burn the house down and assault [Rutledge] and everyone else associated with the House," and that he would "do everything in his power to ruin [Rutledge] financially and spiritually." (Id.). Corley immediately retreated from his comments, however, claiming that he was not threatening Rutledge and would not harm Rutledge himself, but that he knew of "people who would." (Id.).

On that same day, Breckenridge and Poling arrived at 22 Short Street to commence Poling's residency. They were met there by Mayor Akers, Corley, and approximately 6 to 12 other neighbors. As Breckenridge attempted to exit his car he was confronted by Corley, who verbally abused Breckenridge and made

threatening gestures.   Corley also told Poling to "leave and go ruin someone else's neighborhood."   (Id. at ¶ 55).

The complaint makes no reference to any other contact between Corley and plaintiffs, either before or after May 27, 2011.  Plaintiffs now bring this action against Corley, alleging that he has discriminated against plaintiffs on the basis of disability, and has threatened, coerced, and harassed plaintiffs in contravention of certain provisions of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604(f)(1) and 3617, and its implementing regulations.  Corley treats the claims as separate and distinct, one falling under § 3604 and the other under § 3617, and he moves to dismiss both.

Corley first argues that plaintiffs have failed to state a claim under § 3604 inasmuch as they have failed to make the required showing that §3604 is made applicable under these facts by 42 U.S.C. § 3603.  Even if § 3604 applies, Corley asserts, plaintiffs have failed to show that he discriminated in the rental of or otherwise made unavailable a dwelling to any renter.

Corley next contends that he cannot be liable under § 3617, inasmuch as § 3617 applies only to threats that interfere with the valid exercise of rights granted under 42

5

U.S.C. §§ 3603, 3604, 3605, or 3606, and that even if § 3617 does apply, Corley's conduct did not rise to the level of that which is prohibited by the FHA.  Finally, in analyzing the § 3617 claim, the court also evaluates plaintiffs' related "implementing regulations" claim as one pursuant to 24 C.F.R. § 100.400, a HUD regulation which, in the name of § 3617, also prohibits certain acts of threat, intimidation, or coercion.

II.

A.   Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 127 S. Ct. at

6

1969)); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).  Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." Twombly, 127 S. Ct. at 1965.  It is now settled that "a formulaic recitation of the elements of a cause of action will not do." Id.; Giarratano v. Johnson, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim.  Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005) (quoting Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).  Instead, the opening pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965; Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)(noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  Stated another way, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 1974; Giarratano, 521 F.3d at 302. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (citations omitted).

7

As noted in Iqbal, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a district court to "accept as true all of the factual allegations contained in the complaint . . . .'" Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. of Health and Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). The court is additionally required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

B.   First FHA Claim: 42 U.S.C. § 3604

Plaintiffs allege that Corley's threatening acts on May 27, 2010, ran afoul of 42 U.S.C. § 3604(f)(1), a provision of the FHA making it unlawful to

> [D]iscriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of--
>
> > (A) that buyer or renter,
> >
> > (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
> >
> > (C) any person associated with that buyer or renter.

8

42 U.S.C. § 3604(f)(1).

Corley contends that he cannot be liable under this provision, inasmuch as the dwelling in question does not fall within its scope.  Indeed, § 3604 is made applicable only by 42 U.S.C § 3603(a)(1) and (2), which sets forth the two categories of homes subject to the above prohibitions.  In order to survive Corley's motion to dismiss, plaintiffs must first have alleged facts capable of placing the proposed Oxford House-Bledsoe within either of those two categories.[2]

First, § 3603(a)(1) makes § 3604 applicable to dwellings that are owned by the federal government or that make use of federal loans, grants, or guarantees.  The complaint does not allege that the home at 22 Short Street is owned or operated by the federal government; rather, it is owned by Darrell Sharpe and leased to Oxford House.  (Compl. ¶¶ 27, 52.)  Further, there is no allegation that the house was provided in whole or in part by any grant, loan, advance, or other contribution by the federal government, or that it was purchased from a state or local agency receiving federal assistance.  Instead, it is alleged that each Oxford House is "financially self-supported."

---

[2] 42 U.S.C. § 3603 is recited fully in the Appendix attached hereto.

(Id. at ¶ 4). Accordingly, plaintiffs have failed to place the house at 22 Short Street within the category of dwellings defined by § 3603(a)(1).

Second, § 3603(a)(2) makes § 3604 applicable to "all other dwellings," except that "single-family house[s] sold or rented by an owner" are, with some exceptions, specifically exempted by § 3603(b)(1). Plaintiffs freely concede that 22 Short Street is a "single family house." [3]

The exceptions to the single-family exemption are found in the four provisos in § 3603(b)(1). Pursuant to those provisos, a "single-family house" comes within the scope of § 3604 if: (1) the owner of the house owns more than three single-family houses at any one time; (2) the owner does not reside in the house, and the house has been sold more than once in a 24-month period; (3) the owner holds an interest in the proceeds of the sale or rental of more than three such single-family houses at any one time; or (4) the owner employed the services or facilities of real estate professionals in connection with the sale of the house, or published

---

[3] While reciting in the complaint their version of the facts, which the court accepts at this stage as true, plaintiffs repeatedly refer to the site of the proposed Oxford House-Bledsoe as a "single family" house or use. (Compl. ¶¶ 26, 34, 51, 56, 62, 65).

advertisements or notices in violation of the Fair Housing Act.
42 U.S.C. § 3603(b)(1).

Thus, in order to state a claim, plaintiffs must plead facts triggering one of the exceptions to the exemption, i.e., the provisos embedded in § 3603(b).   Plaintiffs have not. Nothing in the complaint can be construed to address any of those potential circumstances.   Inasmuch as plaintiffs have failed to place the home at 22 Short Street within any category of dwelling to which § 3604 is applicable, this claim against Corley cannot go forward.

C.   Second FHA Claim:   Threats, Intimidation, and Coercion

1.   42 U.S.C. § 3617

Plaintiffs also claim that Corley's words and conduct towards Poling, Breckenridge, and Rutledge violated a provision of the FHA making it unlawful to

coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.   Stated another way, a plaintiff must establish the following elements: that "(1) [he] is a protected

individual under the FHA, (2) [he] was engaged in the exercise
or enjoyment of [his] fair housing rights [granted by §§ 3603-
3604], (3) the defendants coerced, threatened, intimidated, or
interfered with [him] on account of [his] protected activity
under the FHA, and (4) the defendants were motivated by an
intent to discriminate." Bloch v. Frischholz, 587 F.3d 771, 783
(7th Cir. 2009) (en banc) (citation omitted).  In his motion to
dismiss, Corley contends that plaintiffs are not entitled to any
of the rights enumerated by §§ 3603-06, and thus cannot possibly
satisfy the second element of the § 3617 claim.[4]

     Those four sections comprise the substantive rights
and protections created by the FHA.  As detailed above, § 3604
prohibits discrimination in the sale or rental of certain
dwellings, and § 3603 defines the scope of that prohibition.
Section 3605 specifically prohibits discrimination by persons
"whose business includes engaging in residential real estate-

_____

     [4] The court notes that plaintiffs mischaracterize Corley's
motion as contending that "[Corley] is entitled to dismissal of
the complaint because the plaintiffs have not alleged that
[defendants] have violated § 3604(f)."  (Pl.'s Resp. at 7).  The
circuits are split on whether such a requirement exists.
Compare Sofarelli v. Pinellas County, 931 F.2d 718, 722 (11th
Cir. 1991) (claims brought under § 3617 do not require an
underlying violation of §§ 3603-06), with Frazier v. Rominger,
27 F.3d 828, 834 (2d Cir. 1994) (predicate violation required).
However, inasmuch as Corley's true argument is based simply on
the elements set forth above -- and agreed upon by both parties
-- the court is relieved of the need to resolve such a question.

related transactions." 42 U.S.C. § 3605.  Finally, § 3606 makes
it unlawful to "deny any person access to or membership or
participation in any multiple-listing service, real estate
brokers' organization or other service, organization, or
facility relating to the business of selling or renting
dwellings . . . ." 42 U.S.C. § 3606.

The sufficiency of plaintiffs' § 3617 claim against
Corley thus rests on whether they have alleged facts
establishing their "exercise or enjoyment" of any right under
any of these sections.  42 U.S.C. § 3617.  Plaintiffs have not.
For the reasons previously set forth (supra, part II.B),
plaintiffs have not adequately alleged that §§ 3603 and 3604
apply to the single-family dwelling at issue in this case.
Likewise, plaintiffs fail to allege that §§ 3605 or 3606, which
concern real estate professionals and access to real estate
listings or brokerage services, have any bearing on the facts of
this case.   Absent this critical nexus, plaintiffs' § 3617
claim cannot succeed.

    2.   24 C.F.R. § 100.400 (the "HUD Regulation")

Plaintiffs seek relief not only under the Fair Housing
Act, but also under its "implementing regulations." (Compl.
¶ 78).  The court construes this as a claim under a regulation

issued by the Department of Housing and Urban Development which, in the name of § 3617, forbids "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race, color, religion, sex, handicap, familial status, or national origin of such persons, or of visitors or associates of such persons." 24 C.F.R. § 100.400(c)(2). To highlight the relevance of the regulation to this case: whereas § 3617 requires the "exercise or enjoyment" of one of the rights enumerated therein, the HUD regulation is free of such shackles.

By its own terms, however, the HUD regulation is inapplicable to the lease of the home at 22 Short Street. Found at 24 C.F.R § 100.10, HUD's fair housing rules are subject to exemptions that closely mirror the exemptions of 42 U.S.C. § 3603 and provide that

> Nothing in this part [including §100.400], other than the prohibitions against discriminatory advertising, applies to:
>
> (1) The sale or rental of any single family house by an owner, provided the following conditions are met:
>
> (i) The owner does not own or have any interest in more than three single family houses at any one time.
>
> (ii) The house is sold or rented without the use of a real estate broker, agent or salesperson or the facilities of any person in the business of selling or renting dwellings. . . .

24 C.F.R. § 100.10(c)(1).

14

Accordingly, a legally sufficient claim under the HUD regulation must include allegations that the dwelling being sold or rented is not a "single-family house," or if it is, that: (1) the owner of the house also owns an interest in more than three such houses at the time of the transaction, (2) the house was sold or rented using the services or facilities of a real estate professional, or (3) the owner of the house does not reside therein, and the house has been sold at least once during the 24 months preceding the sale or rental in question.

The court's evaluation of this claim is thus functionally identical to its analysis under the FHA provisions, and the result is the same. The complaint makes clear that the home at 22 Short Street is in fact a "single-family house," which falls, subject to the exceptions to the exemption found in subsections (i) and (ii) above, outside the regulation's scope. Plaintiffs allege no facts establishing that subsections (i) or (ii) are applicable. Accordingly, plaintiffs fail to state a claim upon which relief can be granted under the HUD regulation as well.

III.

For the foregoing reasons, the court ORDERS that Corley's motion to dismiss the claims against him be, and it

15

hereby is, granted, without prejudice.  It is further ORDERED that plaintiffs be, and they hereby are, granted leave to amend the complaint within the next fourteen days, if plaintiffs wish to pursue a claim as to Bill Corley.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: February 10, 2012

John T. Copenhaver, Jr.
United States District Judge

16